IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JOHN NICHOLAS SANDERS,** | : | |
| Plaintiff, | : : : | |
| V. | : : | NO. 5:22-cv-00295-MTT-CHW |
| **BENJAMIN FORD,** *et al.*, | : : | |
| Defendants. | : : : | |

**ORDER & RECOMMENDATION**

Plaintiff John Nicholas Sanders, a prisoner in Valdosta State Prison in Valdosta, Georgia, has filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. He has also filed a motion for leave to proceed in this action *in forma pauperis*, Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2, and two motions to amend the complaint. Mot. to Am., ECF No. 4; Second Mot. to Am., ECF No. 5. As set forth below, Plaintiff's motion to proceed *in forma pauperis* and his motions to amend are now **GRANTED**, and Plaintiff's complaint is ripe for preliminary review.

On that review, Plaintiff will be allowed to proceed for further factual development on his claim that Benjamin Ford, Dooly State Prison Warden Aimee Smith, Valdosta State Prison Warden Jacob Beasley, Tier II Unit Manager Tangie Morrison, and disciplinary report investigator Mr. Flucas denied him due process with regard to his placement in the Tier II program. It is **RECOMMENDED** that all of Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for the reasons set forth below.

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Any court of the United States may authorize the commencement of a civil action, without prepayment of the required filing fee (*in forma pauperis*), if the plaintiff shows that he is indigent and financially unable to pay the court's filing fee. *See* 28 U.S.C. § 1915(a). As permitted by this provision, Plaintiff has moved for leave to proceed *in forma pauperis* in this case. Mot. For Leave to Proceed *In Forma Pauperis*, ECF No. 2. Accordingly, because Plaintiff's filings show that he is unable to prepay any portion of the filing fee, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.

Plaintiff is, however, still obligated to eventually pay the full balance of the filing fee, in installments, as set forth in § 1915(b). The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if Plaintiff's complaint is dismissed prior to service. For this reason, the **CLERK** is **DIRECTED** to forward a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee, as explained below.

A. Directions to Plaintiff's Custodian

Because Plaintiff has now been granted leave to proceed *in forma pauperis* in the above-captioned case, it is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the **CLERK** of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said

institution until the $350.00 filing fee has been paid in full. The funds shall be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected as payment towards the filing fee, provided the amount in the prisoner's account exceeds $10.00. The custodian's collection of payments shall continue until the entire fee has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

B. Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I. Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's recast complaint is now ripe for preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the court must accept all factual allegations

in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or

4

omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.  Factual Allegations

In his complaint, Plaintiff asserts that, on June 14, 2022, while he was housed at Dooly State Prison, he was awakened with a loud bang on his door and someone yelling that his brother was outside. Compl. 5, ECF No. 1. Plaintiff put on his shorts, shoes, and glasses, and then went to see what was happening. *Id*. When he came out of his cell, a group of inmates rushed into the dorm, locked the door behind him, and pointed at Plaintiff, saying, "bust Nick." *Id*. Plaintiff turned around and locked his door as the other inmates came toward him with weapons. *Id*. Plaintiff stood at the door to make sure it stayed closed because the locks can sometimes be picked with an identification card or a homemade shank. *Id*.

While Plaintiff was standing at the door, he could see the group of inmates that had threatened him stab another inmate by the officer's desk. *Id*. They left that inmate lying in his own blood by the front door. *Id*. Several minutes later, the inmates ran out. *Id*. Plaintiff looked out his window and saw officers at the front door, so he came out of his cell and ran downstairs where three inmates were gathered around the inmate who had been stabbed. *Id*. Lieutenant Fudge, Lieutenant Berry, and CERT Officers Williams and

Adams were yelling for help. *Id.*

After Plaintiff and the others informed the officers that they had been threatened and attacked, they all waited on medical help to arrive. *Id.* Once medical got to the dorm, Plaintiff, along with an orderly and several other inmates, helped put the bleeding inmate on the gurney. *Id.* The inmate was then rushed to the medical unit, where Plaintiff was told to wait outside. *Id.* at 7.

While he was waiting outside the medical unit, Plaintiff heard a loud banging noise. He walked in the direction of the store and the gym, where he saw a number of inmates running in and out of the dorm through a red fire emergency door. *Id.* A few inmates who were in the gym tried to ask Plaintiff about what was going on, but Plaintiff then saw CERT Officer Williams and went over to speak to her. *Id.* Plaintiff and Williams started to go back to the dorm when a group of inmates told Williams that they needed to go inside to get another inmate out of the dorm. *Id.* Williams led Plaintiff and the others through the red emergency door and directly to a room where the inmate was locked inside. *Id.* The group then went back outside where more staff were waiting. *Id.*

After waiting several minutes with the warden, Plaintiff was instructed to go with the captain, a few staff members, and several offenders. *Id.* They were then taken to administrative segregation, but there were no rooms available, so they were placed on the yard. *Id.* Less than forty-five minutes later, the "tact squad" came into the prison through the back gate and went to the G and H buildings. *Id.* A few minutes after that, Plaintiff was called to the gate by the tact commander, who had Plaintiff searched and checked for contraband and injuries. *Id.* Mr. Hatchett asked Plaintiff if he was a member of the

gangster disciples, and Plaintiff said that he was not. *Id.* Plaintiff was then taken back to the dorm because his answer was "unsatisfying." *Id.*

In the dorm, Plaintiff saw a milk crate full of homemade weapons and property scattered everywhere. *Id.* The scent of blood was heavy in the air. *Id.* Plaintiff went to his door, but before he could go in, he was turned around and brought back outside. *Id.* Plaintiff was then taken back to the yard outside of administrative segregation. *Id.* After another hour and a half, CERT Officers Turner and Arnold arrived and took Plaintiff to the identification office where some of the staff members were located. *Id.* at 7-8. Plaintiff tried to tell Deputy Warden of Security Graham what had happened, but Graham said that the situation was out of his hands because his boss was involved. *Id.* at 8. Based on other parts of Plaintiff's complaint, Graham appears to have been referring to Regional Director Benjamin Ford. Attach. to Compl. 6, ECF No. 1-1.

While Plaintiff was inside the identification office, another inmate told Graham that Plaintiff and certain other inmates did not have anything to do with the altercation. Compl. 8, ECF No. 1. Graham reiterated that he was not in charge of the situation because Ford was there. *Id.* Graham also said that Plaintiff was getting transferred and asked where his property was located. *Id.* Plaintiff told him, and Graham left with a CERT Officer. *Id.* Officer Turner subsequently returned with some of Plaintiff's property, but Plaintiff noticed right away that his goal device and fans were missing. *Id.* Upon closer look, ninety-five percent of Plaintiff's property was not there. *Id.* Plaintiff immediately notified prison officials about the missing property. *Id.*

Plaintiff notes that he did not assault or stab anyone and that he was not himself

7

assaulted or stabbed. *Id.* Nevertheless, Plaintiff has been transferred to Valdosta State Prison and placed in the Tier II program based on false accusations that have been leveled against him. *Id.* Plaintiff has not received a disciplinary report, which is required to be written when an inmate commits an infraction. *Id.*

### III. Plaintiff's Claims[1]

#### A. Deliberate Indifference to Safety

Plaintiff first alleges that Warden Aimee Smith was responsible for the safety and security of inmates at Dooly State Prison, but that she had not adequately staffed the prison over the past two years, resulting in numerous violent assaults, which generally went unpunished. Attach. to Compl. 3, ECF No. 1-1. Plaintiff also asserts that Warden Smith failed to require her staff to conduct regular shakedowns of the dorms, even after stabbings occurred, which allowed the inmates to retain weapons. *Id.*

In his first motion to amend, Plaintiff adds claims that Deputy Warden of Security Mr. Graham, Lieutenant Fudge, Warden Smith, and Regional Director Benjamin Ford allowed the attack to happen by failing to initiate lockdown protocols despite escalating violence and severe understaffing. Mot. to Am. 1-3, ECF No. 4. In his second motion to amend, Plaintiff also includes allegations against Officer Adams, suggesting that she left

---

[1] Plaintiff has filed two motions to amend his complaint to add additional defendants. Mots. to Am., ECF Nos. 4 & 5. In these motions, Plaintiff does not add or change any of his factual allegations, but instead seeks only to add new claims and defendants based on the facts alleged in the original complaint. At this stage of the proceeding, Plaintiff is permitted to amend his complaint once as a matter of right. *See* Fed. R. Civ. P. 15(a)(1). For additional amendments, a plaintiff may amend with the opposing party's written consent or leave of the court. Fed. R. Civ. P. 15(a)(2). In this case, Plaintiff's motions to amend are now **GRANTED**, and his additional claims are considered herein.

her post, allowing the inmates to threaten Plaintiff and attempt to harm him.  Second Mot. to Am. 1, ECF No. 5.  These allegations implicate potential claims for deliberate indifference to Plaintiff's safety.[2]

To state an Eighth Amendment claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety.  *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk.  *Id.* at 1289-90.  Moreover, the prisoner must assert facts showing causation between the defendant's deliberate indifference and the plaintiff's injury.  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff's allegations arguably show that a dangerous condition arose insofar as a group of inmates were able to get out of their own cells and attack other inmates.  He also alleges that these defendants were aware that low staffing levels had led to increased violence in the prison, potentially showing that the defendants were aware of a potentially dangerous situation and failed to take action to address the issue.  Plaintiff does not,

---

[2]Plaintiff couches these claims in terms of negligence and reckless endangerment, which are state law claims.  As noted above, the federal claim implicated here is deliberate indifference to safety, which Plaintiff also references indirectly insofar as he refers to his Eighth Amendment right to be free from cruel and unusual punishment.  Because it is recommended that Plaintiff's deliberate indifference claim be dismissed and it is not clear whether the Court will ultimately retain jurisdiction over the claims that are proceeding for further factual development, it does not appear appropriate at this stage of the proceeding to consider any potential state law claims.

however, allege that he suffered any actual injury as a result of the alleged deliberate indifference or that the defendants' deliberate indifference caused him any injury.

While a plaintiff may be able to pursue a claim for prospective relief in the absence of an injury, Plaintiff in this case has been transferred to a different prison, such that any safety issues at Dooly State Prison are no longer a potential danger to him. Thus, prospective relief would not be appropriate. Plaintiff, therefore, has not stated a claim for relief in this regard, and it is **RECOMMENDED** that Plaintiff's deliberate indifference claims against Warden Aimee Smith, Deputy Warden of Security Graham, Lieutenant Fudge, Benjamin Ford, and Officer Adams be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### B. Deprivation of Property

Plaintiff also asserts that Lieutenant Fudge was responsible for Plaintiff losing most of his property because, when the incident occurred, she failed to secure the building to ensure that Plaintiff's property was not stolen. Attach. to Compl. 4, ECF No. 1-1. This amounts to a claim that Plaintiff was deprived of his property without due process of law.

To state a claim for denial of due process, a plaintiff must allege that he was deprived of life, liberty, or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (recognizing that prisoners "may not be deprived of life, liberty, or property without due process of law"). The Due Process Clause of the Fourteenth Amendment is not offended when a government official deprives an individual of his personal property if the state makes available a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The State of Georgia provides Plaintiff an

10

adequate post-deprivation remedy for the loss of his property through a state court action, which covers Plaintiff's loss of property in this situation. *See* O.C.G.A. §§ 51-10-1 through 51-10-6. Thus, it is also **RECOMMENDED** that Plaintiff's due process claim against Lieutenant Fudge based on the loss of Plaintiff's property be **DISMISSED WITHOUT PREJUDICE**.

    C. <u>Due Process for Placement on Tier II</u>

Plaintiff next asserts that Benjamin Ford ordered that Plaintiff be placed in Tier II segregation without charging Plaintiff through a disciplinary report or permitting Plaintiff any sort of hearing or opportunity to appeal. Attach. to Compl. 6, ECF No. 1-1. Plaintiff attached some documentation showing the various restrictions that apply to prisoners in the Tier II program. Attach. to Compl. 1-2, ECF No. 1-5. In his second motion to amend, Plaintiff adds Dooly State Prison Warden Aimee Smith, Valdosta State Prison Warden Jacob Beasley, Tier II Unit Manager Tangie Morrison, and disciplinary report investigator Mr. Flucas to this claim, asserting that all of these defendants acted together as part of a conspiracy to deprive him of due process. Second Mot. to Am. 2-8, ECF No. 5. Plaintiff also suggests that Lieutenant Fudge and Officer Adams are responsible for his placement on Tier II because, if they had responded properly during the attack, no one would have thought that he was part of the attacking group, and he would not have ended up in the Tier II program. *Id.* at 1-2; Attach. to Compl. 5, ECF No. 1-1.

The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "in being confined to a general population cell, rather than the more austere and restrictive

administrative segregation quarters." *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Thus, to state a due process claim, a prisoner must allege more than that he has been confined in segregation without due process.  *See Sandin v. Conner*, 515 U.S. 472, 476 (1995).  Due process protections are only evoked in cases where the change in conditions is so severe that it (1) essentially exceeds the sentence imposed by the court of conviction or (2) imposes atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life.  *Id.* at 484.  Confinement in administrative segregation does not impose "an atypical and significant hardship" on a prisoner if the conditions of his confinement mirror the general prison population conditions.  *Id.* at 486.

It appears from Plaintiff's allegations and documentation that the conditions in Tier II are significantly different from those in the general population.  Moreover, although Plaintiff's allegations do not show that the defendants actually conspired with each other, he arguably has alleged enough facts to suggest that Benjamin Ford, Dooly State Prison Warden Aimee Smith, Valdosta State Prison Warden Jacob Beasley, Tier II Unit Manager Tangie Morrison, and disciplinary report investigator Mr. Flucas all personally participated in the steps that led to Plaintiff being put into Tier II at Valdosta to some extent.  Plaintiff's allegations also suggest that he has been held in the Tier II program for several months without having received a disciplinary report or the ability to challenge this placement.  At this stage, Plaintiff's allegations are sufficient to allow him to proceed for further factual development on his claim that Ford, Warden Smith, Warden Beasley, Morrison, and Flucas denied him due process with regard to his placement and retention in the Tier II program.

As to Officer Adams and Lieutenant Fudge, Plaintiff alleges that they abandoned their posts and failed to take action to secure the building during the attack. Although Plaintiff asserts that these failures ultimately led to Plaintiff being mistakenly held in the Tier II program, he includes no allegations that either of these defendants actually participated in any way in having Plaintiff transferred to, or retained in, Tier II. Thus, he has not alleged facts showing that Officer Adams or Lieutenant Fudge was involved with the purported deprivation of due process. It is therefore **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** with regard to Officer Adams and Lieutenant Fudge.

IV.     Conclusion

Thus, for the reasons discussed above, Plaintiff will be allowed to proceed for further factual development on his claim that Benjamin Ford, Warden Aimee Smith, Warden Jacob Beasley, Tangie Morrison, and Mr. Flucas denied him due process with regard to his placement on Tier II. It is **RECOMMENDED** that all of Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga.

L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANT BENJAMIN FORD, WARDEN AIMEE SMITH, WARDEN JACOB BEASLEY, UNIT MANAGER TANGIE MORRISON, and DISCIPLINARY REPORT INVESTIGATOR MR. FLUCAS**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

### DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.  Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.  This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing

supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 5th day of October, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
